**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 20, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GLEN DALE HAMMON,

      Petitioner-Appellant,

v.

DAVID MILLER,

      Respondent-Appellee.

No. 08-6151
(D.C. No. 5:04-CV-01007-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

---

We consider Glen Dale Hammon's claim that his appellate counsel was

ineffective for failing to assert on direct appeal that trial counsel labored under a

conflict of interest. After holding an evidentiary hearing, the district court

concluded appellate counsel was not ineffective and therefore denied habeas relief

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

under 28 U.S.C. § 2254. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we affirm.

I.

Because the underlying facts and procedural history are mostly set forth in our prior decision, *Hammon v. Ward*, 466 F.3d 919 (10th Cir. 2006), we recount them in summary fashion.

A police officer initiated a traffic stop of the car driven by Glen.[1] Demarcus was a passenger. While performing an inventory search of the car, which was owned by Glen's girlfriend, officers found a bag containing thirteen or fourteen crack cocaine rocks and a loaded handgun with a mutilated serial number on the passenger side of the vehicle. Glen and Demarcus were arrested. On the day of the traffic stop and his arrest, Demarcus told the police the gun was his and Glen passed the drugs to him and requested he hide them.

Eddie Jackson was retained to represent both brothers. He negotiated a plea bargain for Demarcus, who had no prior criminal history. Demarcus pled guilty to possession of a controlled dangerous substance and possession of a firearm with a mutilated serial number. He received a five-year deferred sentence. Demarcus was required, as part of his plea agreement, to stand by his

---

[1] Because this case involves two brothers, Glen and Demarcus Hammon, we refer to them by first name only.

prior statements implicating Glen. In the factual basis for his plea Demarcus said the drugs also belonged to Glen.

Glen, who had previously been convicted of second-degree murder and discharge of a firearm from a moving vehicle, rejected a plea offer of fifteen years' imprisonment. Instead, he proceeded to trial and was convicted of possession of a controlled dangerous substance, possession of a firearm by a convicted felon, and possession of a firearm with a mutilated serial number. He was sentenced, in accordance with the jury's recommendation, to twenty, fifty, and twenty years' imprisonment respectively. The first two sentences were to be served consecutively and the third concurrently with the first two.

Andreas Pitsiri represented Glen on direct appeal. The Oklahoma Court of Criminal Appeals (OCCA) affirmed the convictions, rejecting an insufficiency of the evidence argument. The OCCA also affirmed the state district court's denial of post-conviction relief on Glen's pro se claim of ineffectiveness of appellate counsel (for failing to raise trial counsel's alleged conflict of interest).

The federal district court denied Glen's pro se 28 U.S.C. § 2254 petition for a writ of habeas corpus, rejecting his ineffective-assistance-of-appellate-counsel claim. On appeal, we appointed counsel for Glen and ultimately remanded for an evidentiary hearing to determine whether trial counsel's joint representation of Glen and Demarcus adversely affected Glen because counsel's conflict of interest

prevented Demarcus from testifying that he, alone, possessed the gun and both of them were unaware of the crack cocaine found in the car.

On remand the district court held an evidentiary hearing in which Glen, Demarcus, Pitsiri, and Jackson testified. After post-hearing briefing, the magistrate judge, in a thorough and well-reasoned report and recommendation, concluded Pitsiri was not ineffective because (1) he made a reasoned, strategic decision, after investigation and research, not to present an ineffectiveness of trial counsel claim and (2) as there was no actual conflict of interest, Glen suffered no prejudice.

In reaching his conclusion, the magistrate judge considered each of the conflict-of-interest allegations we identified in *Hammon*, 466 F.3d at 929-30, to wit: (1) the initial defense strategy, prior to Demarcus's plea agreement, was for Demarcus to admit possession of the gun and both brothers to deny knowledge of the drugs; (2) Jackson negotiated a plea agreement for Demarcus in which the State agreed to a five-year deferred sentence only if Demarcus inculpated Glen; (3) because Jackson never informed Glen that Demarcus pleaded guilty, Glen rejected a plea offer of fifteen years' imprisonment and instead went to trial; and (4) Jackson finally informed Glen during trial that Demarcus had pleaded guilty and would not be a defense witness because he would receive prison time if he reneged on his inculpation of Glen.

The magistrate judge, however, determined the facts were not entirely consistent with Glen's allegations. Specifically, the magistrate judge found: (1) Jackson was initially retained through the preliminary hearing on the presumption that both brothers would plead guilty; (2) Jackson credibly testified that the initial strategy (Demarcus possessed the gun and neither brother was aware of crack cocaine in the car) could have been devised before he received a copy of Demarcus's statement to the police saying Glen handed him the drugs to hide at the time of the traffic stop; (3) Jackson's strategy never involved Demarcus testifying at Glen's trial because any helpful testimony concerning the gun would have been outweighed by damaging testimony concerning the drugs; (4) in order to obtain a five-year deferred sentence the State only required Demarcus to make a statement consistent with those he previously made to the police; (5) Glen learned of Demarcus's plea agreement several months prior to trial, and Jackson told Glen two weeks before trial that Demarcus would not be a defense witness; (6) Glen turned down the plea bargain offered to him because he wanted the same plea deal Demarcus received or at least a sentence more favorable than fifteen years; and (7) Glen was not credible in his testimony that at the time of trial he believed Demarcus would be a defense witness.

Based on these factual findings, the magistrate judge concluded that Jackson was not forced to make choices advancing Demarcus's interests over Glen's interests because the statement Demarcus made in his plea summary was

-5-

no more inculpatory than the statement he had previously given to police. Also, the magistrate judge determined: (1) calling Demarcus as a defense witness was never part of the trial strategy because Demarcus's testimony would have been "fatal" on the drug charge and his impeachment on the drug charge would potentially harm his exculpatory testimony concerning the gun; (2) Jackson's trial strategy (not call Demarcus and instead try, in other ways, to create reasonable doubt as to whether Glen possessed the gun or the drugs) was sound and not the result of a conflict of interest or competing loyalties; and (3) nothing in the trial record Pitsiri reviewed would cause a reasonable appellate attorney to believe Jackson was forced to make choices advancing the interests of Demarcus at the expense of Glen. In reaching this latter conclusion, the magistrate judge noted that Demarcus had made both exculpatory and inculpatory statements concerning Glen before entering into the plea agreement, thereby making it difficult for Demarcus to take a different position at trial.

The magistrate judge also found Jackson was aware of the potential conflict of interest and had discussed it with Glen, Demarcus, colleagues, and the Oklahoma Bar Association. He decided that at most a potential conflict was presented, but the potential conflict did not ripen because the State decided not to offer at trial the summary of facts from Demarcus's plea agreement.

Accordingly, the magistrate judge determined that Pitsiri was not ineffective for failing to raise a claim of ineffective assistance of trial counsel.

Jackson had a strong strategic reason not to call Demarcus as a defense witness and there was no reasonable probability that raising the conflict issue on appeal would have produced a different result.

After considering Glen's objections to the magistrate judge's report and recommendation, the district court adopted the report and recommendation and denied habeas relief. This appeal followed.

## II.

Here Glen repeats his ineffective assistance of appellate counsel arguments. According to Glen, Jackson sacrificed his interests for those of Demarcus because procuring the best possible plea bargain for Demarcus conflicted with his best possible defense of presenting exculpatory evidence through Demarcus.

Typically, we review a habeas claim under the deferential review standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (ADEPA). *See* 28 U.S.C. § 2254(d). But we do not apply AEDPA's deferential standards "when a federal district court holds an evidentiary hearing and considers new evidence that was not before the state court at the time it reached its decision, even if the state court resolved the claim on the merits." *Young v. Sirmons*, 486 F.3d 655, 663 (10th Cir. 2007); *see also Hammon*, 466 F.3d at 928 n.9. Accordingly, we review the district court's findings of fact for clear error "and its legal conclusions de novo." *Valdez v. Ward*, 219 F.3d 1222, 1230 (10th Cir. 2000).

In evaluating a claim of ineffective assistance of appellate counsel, we follow *Strickland v. Washington*, 466 U.S. 668, 687-91, 694 (1984). *Strickland* requires Glen to show Pitsiri's failure to raise the conflict-of-interest issue was objectively unreasonable and there was a reasonable probability Glen would have prevailed on appeal if Pitsiri had raised the conflict issue. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). In evaluating appellate counsel's performance, we consider the merits of the omitted issue:

> "If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." On the other hand, "if the omitted issue has merit but is not so compelling, we must assess the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance."

*Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (per curiam) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (citation and alteration omitted)).

Applying these standards, we consider whether Jackson's representation "was constitutionally ineffective because of a conflict of interest." *Hammon*, 466 F.3d at 928; *see Wallace v. Ward*, 191 F.3d 1235, 1245 (10th Cir. 1999) ("Effective assistance of counsel includes the right to representation that is free from conflicts of interest."). Glen must demonstrate an actual conflict of interest that adversely affected Jackson's performance; it is insufficient for him to show

"a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002); *see also Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (mere possibility of conflict of interest "is insufficient to impugn a criminal conviction"). "An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client." *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003) (quotation marks and ellipsis omitted); *see also United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir. 1990) ("[D]efense counsel's performance [i]s adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others.").

Under the circumstances presented here, we cannot overturn the district court's decision. Jackson was fully aware of his duty of loyalty and the potential for a conflict of interest. He testified at the evidentiary hearing that he never planned to call Demarcus as a defense witness because (1) Demarcus had inculpated Glen regarding the drugs in his earlier statement; (2) Demarcus would not be a credible witness; and (3) if the State impeached Demarcus with his prior statement, the jury could not believe the exculpatory testimony regarding the gun. Instead, Jackson's strategy, in relevant part, focused on Glen's lack of knowledge of either the gun or the drugs, and was supported by the (somewhat weak) testimony of his mother.

Demarcus consistently said he, alone, possessed the gun. Demarcus was clearly Glen's best witness on the gun issues. Had Demarcus testified, it is possible the jury would have acquitted Glen on the gun charges. But that mere possibility reduces to speculation in light of the State's evidence and argument that drug dealers work as a team, with one person driving the car, acting as security, and typically having access to the gun, while the other sells the drugs and handles the money. It is undisputed that Glen drove the car, the loaded handgun was under the passenger seat, the drugs were in the glove box area in front of Demarcus, and Demarcus had a large amount of money in twenty dollar bills on his person.

However, had Demarcus testified, Jackson could not limit his testimony to the gun issues. He would have been subject to cross examination about the drugs and would have to account for his statements to the police implicating Glen (at the time of the traffic stop Glen gave Demarcus the drugs to hide). His accounting would be further complicated by other trial evidence. A testifying police officer observed the brothers moving their hands while they were in the car during the traffic stop. Thus, as Jackson testified, it came down to trial strategy – calling Demarcus relative to the gun charges would, in his judgment, have been outweighed by the resulting damage on the drug charge. Moreover, Jackson had no way to know the gun charges would result in the highest sentence.

Demarcus's plea agreement did not require him to inculpate Glen beyond the prior inculpatory statement he made before Jackson was retained. In light of that statement, Jackson's negotiation of the plea agreement for Demarcus did not conflict with any alternative or best strategy for Glen. And the plea agreement did not prevent Jackson from making a conflict-free decision on whether to call Demarcus as a trial witness. Indeed, even if separate attorneys had represented Glen and Demarcus, Glen's attorney would have to deal with Demarcus's statement inculpating Glen with respect to the drugs. Thus, the omitted conflict issue was not "so plainly meritorious" such that Pitsiri should have raised the issue on direct appeal. *Miller*, 354 F.3d at 1298 (quotation omitted); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (declining to require appellate counsel to raise all nonfrivolous issues).

We presume Pitsiri reached the same conclusion; he was aware of and evaluated the issue. His file contained (1) letters from Glen hinting at a potential conflict of interest and (2) his notation that the conflict issue was meritless. The notation also said the basis for Demarcus's guilty plea was not brought out at trial and the plea contained both exculpatory language (Glen did not own the gun) and inculpatory language (both brothers possessed the drugs). Pitsiri testified he had reviewed the entire record, presumably including Jackson's mention of a potential conflict of interest at a bench conference during the trial. *See Thornburg v. Mullin*, 422 F.3d 1113, 1142 (10th Cir. 2005) ("Appellate attorneys work from a

trial record[.]").  And Pitsiri testified to his standard practice of reviewing the Information, which included an affidavit of probable cause noting Demarcus's statements (the gun was his and Glen gave him the cocaine to hide when they were stopped).

Pitsiri, however, did not specifically remember why he chose not to raise the conflict issue on direct appeal or why he considered the issue meritless.  In spite of his faulty memory in that regard, he was certain he had rejected the issue as meritless after researching the issue.  "[G]iven the strong presumption of reasonable professional assistance and the accompanying evidentiary burden imposed on [Glen], . . . it is [Glen] who must bear the brunt of [Pitsiri's] faulty memory and his ambiguous testimony." *Sallahdin v. Mullin*, 380 F.3d 1242, 1251 (10th Cir. 2004).  Under the circumstances, we presume Pitsiri's "performance was reasonable and that [he] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 1252.  We will not engage in hindsight in assessing counsel's performance.  *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").

Under the facts of this case, we conclude Pitsiri was not objectively unreasonable in failing to assert ineffective assistance of trial counsel.  *See*

-12-

*Miller*, 354 F.3d at 1299. And there is not a reasonable probability Glen would

have prevailed if the conflict issue had been raised on direct appeal. *See Smith*,

528 U.S. at 285.

AFFIRMED.

Entered for the Court


Terrence L. O'Brien
Circuit Judge