**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

GLEN DALE HAMMON,

      Petitioner-Appellant,

v.

RON WARD,

      Respondent-Appellee.

No. 05-6158

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 04-CV-01007-HE)**

---

Glen Dale Hammon filed a brief pro se.

James L. Hankins, Hankins Law Office, Oklahoma City, Oklahoma, for
Petitioner-Appellant.

Jennifer L. Strickland, Assistant Attorney General for Oklahoma, Oklahoma City,
Oklahoma (W.A. Drew Edmondson, Attorney General for Oklahoma, and Laura
E. Samuelson, Assistant Attorney General for Oklahoma, on the brief), for
Respondent-Appellee.

---

Before **HENRY, SEYMOUR,** and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Petitioner-Appellant Glen Dale Hammon ("Petitioner") was convicted in Oklahoma state court of possession of a controlled dangerous substance ("CDS"), possession of a firearm by a convicted felon, and possession of a firearm with a defaced or mutilated serial number, for which he was effectively sentenced to seventy years' imprisonment. Petitioner filed a pro se 28 U.S.C. § 2254 habeas petition challenging those convictions, which the district court denied. We issued a certificate of appealability on the issue of ineffective assistance of appellate and trial counsel, and we now vacate the district court's order denying § 2254 relief and remand for an evidentiary hearing.

**BACKGROUND**

**I. Factual Background**

On October 19, 2000, Petitioner was driving through an Oklahoma City suburb in a vehicle with his brother, Demarcus Hammon, as the passenger, when Officer Hill of the Del City Police Department initiated a traffic stop of the vehicle because the brake lights were not working. Officer Hill approached the driver's side and asked Petitioner for his license and proof of insurance. After Petitioner stated that he had neither, Officer Hill returned to his patrol car to confirm that information with dispatch.

Once Officer Turner and Lieutenant Baker arrived as back-up, Officer Hill again approached the vehicle to arrest Petitioner for driving without a license and for an outstanding warrant. Officer Hill ordered Petitioner out of the car,

- 2 -

informed him that he was under arrest, and placed him in handcuffs. Officer Hill searched Petitioner's person as part of that arrest and found nothing. Officer Turner removed Demarcus Hammon from the car, performed a pat-down search of him, and discovered nothing. Demarcus Hammon did not have any outstanding warrants, but the officers did not release the car to him because his license had also been suspended and the car was not insured.

Officers Hill and Turner thus conducted an inventory search of the vehicle. The officers first searched the driver's side of the vehicle and found nothing there. In searching the passenger's side, however, Officer Hill found a bag containing thirteen to fourteen gravel sized brownish-white rocks located in the cavity of the dashboard where the glove box would normally be located. Subsequent tests revealed the rocks to be crack cocaine. Underneath the passenger seat, the officers discovered a loaded semiautomatic handgun with a mutilated or defaced serial number.[1] No other contraband was found inside the car. At that time, Demarcus Hammon was arrested and searched, and the officers discovered $260.00 in $20 bills on him.

While in county jail, Glenn and Demarcus Hammon retained the same defense counsel to represent them. At some point before trial, trial counsel negotiated a plea bargain for Demarcus Hammon. Petitioner, unaware his brother

---

[1] The gun was never submitted for fingerprint testing, allegedly because Officers Hill and Turner had handled the gun.

had pleaded, rejected a plea offer of fifteen years in prison and proceeded to trial.

The State apparently sought to call Demarcus Hammon as a witness at Petitioner's trial, but it was unable to locate him. In its case-in-chief, the State's two main witnesses were Officers Hill and Turner, both of whom testified about the stop and subsequent search as well as their opinion regarding whether the amount of drugs found in the vehicle was for distribution or personal use.[2] Without objection from trial counsel, Officer Hill testified that, based upon the amount of rocks found, the money found on Demarcus Hammon, the fact that neither Petitioner nor Demarcus Hammon exhibited signs of being under the influence of drugs, the absence of crack-use paraphernalia found in the car, and the presence of the gun, the drugs found in the vehicle were for distribution—as Officer Hill basically described, "the gun, the money, and the dope." Officer Turner testified to essentially the same facts and opinions as Officer Hill, but he additionally testified, again without objection from trial counsel, that his opinion that the drugs were for distribution was based on the fact that the Hammon brothers were stopped in an area of town with heavy gang and drug activity.

---

[2] The rest of the State's evidence consisted of chain-of custody testimony and Oklahoma State Bureau of Investigation agents' testimony regarding the testing of the contents of the baggie and the examination of the gun.

Petitioner's trial counsel gave no opening statement.[3] He called only one witness—Evan June Smith, Petitioner's mother. Ms. Smith testified that she visited Petitioner in jail and that he told her the gun was not his and that he did not know anything about the drugs. According to Ms. Smith, Petitioner also told her that, on the day he was arrested, he had planned to pick up Demarcus Hammon and then drive to her house. She further testified that the car driven by Petitioner did not belong to her, Petitioner, or Demarcus Hammon.

To rebut Ms. Smith's testimony about her son's statement that the gun was not his, the State confronted her on cross-examination with a letter Petitioner had written to then-District Attorney Bob Macy, which was read into the record by the prosecutor:

> Mr. Macy, I am Glen Hammon. My birthday is January 17, 1976. I am accused . . . with my brother, Demarcus Hammon, . . . after being stopped in a car searched by officer [sic]. A firearm was found under the passenger side where Demarcus Hammon was sitting. He confessed to the firearm on the spot. This information should be written in [sic] police report. Why am I still charged with possession of firearm? Thank you for your time, respectfully yours, Glen Hammon.

At the conclusion of Ms. Smith's testimony, the defense called no other witnesses, Petitioner waived his right to testify on his own behalf, and the defense rested.

---

[3] Petitioner's counsel had reserved opening statement until prior to the defense's case-in-chief. When trial counsel began his statement, the State's objections resulted in a bench conference where the trial court explained the difference between opening statement and closing argument. Petitioner's counsel decided to forego another attempt at opening statement.

Although the State could not locate Demarcus Hammon and thus could not call him in its rebuttal case, it attempted to introduce Demarcus Hammon's plea paperwork. Specifically, the State wanted to read into the record a statement from the factual basis for the plea in which Demarcus Hammon admitted under oath that "I committed the crimes of possession of CDS and possession of a firearm while a passenger in an automobile driven by my brother, Glen Hammon; the gun was mine; the CDS belonged to both of us." In response, Petitioner's trial counsel argued that if the factual basis for Demarcus Hammon's plea was read to the jury, then the jury should also simultaneously be informed that there was an agreement between Demarcus Hammon and the State that Demarcus Hammon would, in exchange for receiving a deferred sentence,[4] inculpate Petitioner in the factual basis for his plea and testify against Petitioner at trial.

The exchange that followed between trial counsel (Mr. Jackson) and the trial court is particularly relevant to this appeal:

> **THE COURT**: I don't see it in this portion of the paperwork. The part where they discuss the plea agreement it says, "Is their [sic] a plea agreement?" And it says, "Yes." And then handwritten in is -- well, typed in, "What is your understanding of the plea agreement?" Handwritten in, "I'm pleading guilty to Possession of CDS and Possession of a Firearm in exchange for a five-year deferred sentence . . . ."

---

[4] Under Oklahoma law a "deferred sentence," which is very favorable to a criminal defendant, entails a probationary period of up to five years after which, if the accused has complied with the rules and conditions of probation, the case is dismissed without a criminal conviction and the record is expunged. See Okla. Stat. tit. 22, § 991c.

**MR. JACKSON**: In exchange for that statement -- he's saying in exchange for that statement he received consideration. In other words, he was motivated to the statement be given [sic]. We have –

**THE COURT**: Well, he may or -- I don't know.

**MR. JACKSON**: We have a right to inform the jury -- we have the right to inform the jury [sic] any agreements [Demarcus Hammon] had with the district attorney that the court approved. It's like -- isn't it like a jail house snitch or –

**THE COURT**: No, not at all. I mean, he's merely pleading guilty and --

**MR. JACKSON**: In considering [sic] of a five-year deferred.

**THE COURT**: Right.

**MR. JACKSON**: If [Demarcus Hammon] had not inculpated [Petitioner], [Demarcus Hammon] would not have gotten [a five-year deferred sentence].

**THE COURT**: I don't know. It doesn't say in here [the plea paperwork] that. I don't know if that's true or not. I don't know.

At this point, trial counsel instructed the trial court that he had a conflict of interest in this case because he had also represented Demarcus Hammon in negotiating the plea bargain:

**MR. JACKSON**: Well, I have a bit of a conflict of interest, Your Honor, in that I was the attorney [for Demarcus Hammon] as well.

**THE COURT:** That's your --

**MR. JACKSON**: And that's something I need to --

. . .

**THE COURT**: Well, I'm asking about your discussions with the State of Oklahoma. Did the State of Oklahoma say to you, Your Client, Mr. Demarcus Hammon, must inculpate his co-defendant [Petitioner] in return for this recommendation of a five-year deferred [sentence]?

**MR. JACKSON**: That's correct.

**THE COURT**: You're saying that the State of Oklahoma said that?

**MR. JACKSON**: On the CDS charge. And it was a negotiated matter, Your Honor . . . .

. . .

**THE COURT:** Okay. And you negotiated that with who? Paulette Stewart? She's the one who took the plea.

**MR. JACKSON:** I believe that's right. And Mr. Pate, I believe. There were –

**MR. SIDERIAS** [Assistant District Attorney]: I asked Mr. Pate about this matter and he has no recollection of it. That's not to say it didn't happen; its just to say he's probably negotiated a lot of cases since then.

. . .

**MR. JACKSON:** Your Honor, there was much discussion about this because -- I represented both of them, and we were getting close to a point during the negotiations where if their interest [sic] became adverse, I would have to -- certain decisions in terms of control. And the district attorney knew that. That was part of the negotiation.

Despite this lengthy discussion, the State dropped its request to introduce Demarcus Hammon's statements, and the case was ultimately submitted to the jury without Demarcus Hammon's testimony or plea statements.

## II. Procedural Background

The Oklahoma jury convicted Petitioner of possession of a CDS (crack cocaine) in violation of Okla. Stat. tit. 63, § 2-401; possession of a firearm by a convicted felon in violation of Okla. Stat. tit. 21, § 1283 (Count 2); and possession of a firearm with a defaced or mutilated serial number in violation of Okla. Stat. tit. 21, § 1550 (Count 3). The trial court imposed a sentence in accordance with the jury verdicts: twenty years on Count 1; fifty years on Count 2; and twenty years on Count 3, with the sentences for Counts I and II to be served consecutively to each other and concurrently with Count III—totaling a seventy-year prison term.

The state court appointed Petitioner new counsel to pursue a direct appeal of his conviction and sentences. On direct appeal, Petitioner's counsel raised two errors, only one of which was substantive: 1) evidence adduced at trial was insufficient to sustain the State's burden of proof beyond a reasonable doubt; and 2) the Judgment and Sentence document incorrectly reflected a conviction under Okla. Stat. tit. 21, § 1850 on Count III, when it should have read Okla. Stat. tit. 21, § 1550. The Oklahoma Court of Criminal Appeals (OCCA) affirmed Petitioner's convictions and sentences. Petitioner then filed an application for state post-conviction relief, alleging, inter alia, that his trial counsel was ineffective and represented conflicting interests and that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness and conflict on direct appeal. The state district court denied post-conviction relief. The OCCA affirmed the judgment of the trial court on the ineffective assistance of appellate counsel claim and found Petitioner had procedurally defaulted all of his other claims.

Petitioner then filed a pro se petition for federal habeas corpus relief based on the following grounds: ineffective assistance of trial counsel due to a conflict of interest; ineffective assistance of trial counsel due to trial counsel's performance; prosecutorial misconduct for knowingly allowing perjured testimony; and ineffective assistance of appellate counsel for failure to raise the proceeding claims on direct appeal. Adopting the magistrate judge's report and recommendations, the district court denied all of Petitioner's claims, including his

- 9 -

request for an evidentiary hearing. We issued a certificate of appealability with regard to whether Petitioner received ineffective assistance of appellate and trial counsel in violation of his constitutional rights and appointed counsel to represent Petitioner in support of those claims.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to this appeal because Petitioner filed his § 2254 petition after AEDPA's effective date. See Welch v. Sirmons, 451 F.3d 675, 682 (10th Cir. 2006); Malicoat v. Mullin, 426 F.3d 1241, 1246 (10th Cir. 2005), cert. denied, 126 S. Ct. 2356 (2006). AEDPA strictly limits a federal court's ability to consider issues on habeas review that the state court deemed procedurally barred, see Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999), or to grant evidentiary hearings, see 28 U.S.C. § 2254(e)(2).[5]

---

[5] Section 2254(e)(2) provides that:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—
    (i)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
    (ii)    a factual predicate that could not have been previously discovered through the exercise of due diligence; and
(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no

(continued...)

## I. Procedural Bar

The OCCA found that Petitioner had procedurally defaulted his ineffective trial counsel claims pursuant to Okla. Stat. tit. 22, § 1086 by failing to raise them on direct appeal.[6] Under AEDPA, we generally may not consider "issues on habeas review that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." Smallwood, 191 F.3d at 1268 (quotations omitted). Here, we need not decide whether § 1086 is an independent and adequate state procedural bar because we conclude that Petitioner's allegations are sufficient to establish that the bar should be excused on the basis of ineffective appellate counsel.

---

[5](...continued)
reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)&(B); see also Bryan v. Mullin, 335 F.3d 1207, 1214 (10th Cir. 2003) (en banc).

[6] Section 1086 reads:

All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the prior application.

Okla. Stat. tit. 22, § 1086.

Petitioner properly raised his claim alleging appellate counsel was ineffective for failing on direct appeal to raise ineffective trial counsel due to a conflict of interest. "Because the alleged deficiencies on appeal relate to trial counsel's conduct, we review the claims of ineffective assistance of appellate counsel on their merits, along with the claims of ineffective assistance of trial counsel."[7] Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). We conclude that if the facts are as Petitioner alleges them, then Petitioner is entitled to relief for ineffective assistance of appellate counsel for failure to assert that trial counsel operated under a prejudicial conflict of interest and appellate counsel's ineffectiveness is cause sufficient to excuse the state procedural bar to Petitioner's ineffective trial counsel claim. See Ellis v. Hargett, 302 F.3d 1182, 1186 (10th

---

[7] Although the OCCA determined Petitioner to have procedurally defaulted his claim alleging trial counsel was operating under an actual conflict of interest, we must nevertheless

> review the merits of [Mr. Hammon's ineffective trial counsel claim] in order to determine whether he received ineffective assistance from his appellate counsel. Assuming he demonstrates ineffective appellate assistance, his procedural default will be excused and we may then review the merits of his [ineffective trial counsel] claim[]. Notwithstanding the apparent circularity of this review, our ultimate inquiry is central and straightforward: is our confidence in the outcome of Mr. [Hammon's] conviction and sentence undermined by the fact that [his trial counsel operated under an actual conflict of interest].

Banks v. Reynolds, 54 F.3d 1508, 1516 (10th Cir. 1995) (citations omitted). Our review in this regard is ultimately governed by the deferential AEDPA standard. See 28 U.S.C. § 2254(d); see also Mayes v. Gibson, 210 F.3d 1284, 1288 (10th Cir. 2000).

- 12 -

Cir. 2002) ("A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default."). We therefore proceed to consider the merits of Petitioner's claim challenging direct appeal counsel's representation.

## II. Ineffective Assistance of Appellate Counsel Based on Trial Counsel's Conflict of Interest

Only Petitioner's claim involving appellate counsel's failure to allege on direct appeal that Petitioner's trial counsel operated under a conflict is properly before this court.[8] The district court denied Petitioner habeas relief on this claim without conducting an evidentiary hearing. We conclude that the district court abused its discretion by denying Petitioner an evidentiary hearing. See Anderson v. Attorney General of Kan., 425 F.3d 853, 858 (10th Cir. 2005) ("A district court's decision to grant or deny an evidentiary hearing in a habeas proceeding is reviewed for an abuse of discretion.").

Although AEDPA strictly limits a federal court's ability to grant an evidentiary hearing, in this case Petitioner is freed from § 2254(e)(2)'s limitation because he diligently pursued the factual basis for his claims in state court and

_____

[8] Petitioner argues on appeal that his appellate counsel also omitted a claim that Petitioner was convicted in violation of Oklahoma law for two separate crimes—possession of a firearm by a felon and possession of a firearm with a mutilated or defaced serial number—based upon one act of possession of a firearm. Petitioner did not raise this claim in his § 2254 habeas petition, and we therefore will not consider it on appeal. See McLuckie v. Abbott, 337 F.3d 1193, 1200 n.3 (10th Cir. 2003); Rhine v. Boone, 182 F.3d 1153, 1154 (10th Cir. 1999).

thus did not "fail[] to develop the factual basis of a claim in State court proceedings."  28 U.S.C. § 2254(e)(2); see also Bryan, 335 F.3d at 1214 ("If . . . the petitioner did not fail to develop the factual basis of his claim in State court, § 2254(e)(2) is not applicable and a federal habeas court should proceed to analyze whether a hearing is appropriate or required under pre-AEDPA standards.") (quotations, alterations omitted); see also Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir. 1998).  Consequently, Petitioner is entitled to an evidentiary hearing on the issue of ineffective appellate counsel "so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief."  Anderson, 425 F.3d at 858; see also Medina v. Barnes, 71 F.3d 363, 369-70 (10th Cir. 1995) (discussing at length the pre-AEDPA standard for obtaining an evidentiary hearing).  For the reasons set out below, we conclude Petitioner has met this requirement.  Therefore, contrary to the district court, we conclude that Petitioner is entitled to an evidentiary hearing on his claim of ineffective assistance of appellate counsel for failure to assert that trial counsel operated under a prejudicial conflict of interest.

## A.  Diligence in pursuing the factual basis for his claims

AEDPA precludes a federal habeas court from conducting an evidentiary hearing on a claim that the habeas petitioner failed to develop in state court.  See 28 U.S.C. § 2254(e)(2); see also Bryan, 335 F.3d at 1214.  But "a failure to develop the factual basis of a claim is not established unless there is lack of

diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000); see also Miller, 161 F.3d at 1253 (holding that § 2254(e)(2) does not apply where the petitioner "diligently sought to develop the factual basis underlying his habeas petition, but a state court prevented him from doing so"). "Diligence . . . depends upon whether the prisoner made a reasonable attempt, in light of the information at the time, to investigate and pursue claims in state court." Williams, 529 U.S. at 435; see also Cannon v. Mullin, 383 F.3d 1152, 1176 (10th Cir. 2004). Here, Petitioner sought an evidentiary hearing in his state-post conviction application proceedings, but the Oklahoma courts denied his requests.

We note that "merely requesting a hearing in state court may not be enough to satisfy the requirement that [a petitioner] diligently seek to develop a factual basis for his claim." Parker v. Scott, 394 F.3d 1302, 1325 (10th Cir. 2005). In this case, however, Petitioner not only aggressively sought an evidentiary hearing, he also put on some evidence in support of his allegation of his counsel's conflict of interest. Specifically, the state trial record reflects counsel's concession during trial that negotiating Demarcus Hammon's plea bargain created a conflict of interest in trial counsel's joint representation of the Hammon brothers. Accordingly, the pre-AEDPA standard applies to Petitioner's request for an evidentiary hearing. See Miller, 161 F.3d at 1253.

**B.** **Allegations, if true and not contravened, would entitle Petitioner to habeas relief**

Under the pre-AEDPA standard for granting an evidentiary hearing, we must analyze whether Mr. Hammon's allegations, "if true and not contravened by the existing factual record, would entitle him to habeas relief." Anderson, 425 F.3d at 858. To obtain relief for ineffective counsel, a petitioner must generally show both that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). "When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue." Hooks v. Ward, 184 F.3d 1206, 1221 (10th Cir. 1999) (citation omitted). In conducting this review:

> [i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003). Consequently, in this case, we must consider the merits of Petitioner's claim that his trial counsel was constitutionally ineffective because of a conflict of interest.

Because the OCCA reached and rejected Petitioner's claim of ineffective assistance of appellate counsel on its merits, we may not grant relief on that claim unless the state court's adjudication of it

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Mayes, 210 F.3d at 1288 (indicating, in the context of deciding whether the petitioner was entitled to an evidentiary hearing, that the deferential AEDPA standard applies to our consideration of the merits). Although the OCCA made its decision without granting Petitioner an evidentiary hearing, that summary decision was an adjudication on the merits within the meaning of § 2254(d) because the OCCA determined that Petitioner did "not provide[] any facts or arguments to establish his counsel's performance fell below prevailing professional norms [or] that the outcome of his appeal would have been different," and, therefore, that no evidentiary hearing was warranted. In reviewing the OCCA's adjudication of Petitioner's ineffective assistance of appellate counsel claim, we consider the record as it existed before the OCCA. See Bryan, 335 F.3d at 1215.[9]

---

[9] Although the deferential AEDPA standard under § 2254(d) applies to our assessment of the state court's decision to adjudicate the merits of Petitioner's claim without granting an evidentiary hearing, it does not apply to the district court's ultimate determination on remand of whether the facts established at the

(continued...)

"To determine the applicable 'clearly established' law, we look to Supreme Court precedent as it existed when the state court reached its decision." Brown v. Uphoff, 381 F.3d 1219, 1224 n.4 (10th Cir. 2004). A state-court decision is contrary to clearly established Supreme Court precedents if it

> applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of th[e] [Supreme] Court but reaches a different result. A state-court decision involves an unreasonable application of th[e] [Supreme] Court's clearly established precedents if the state court applies th[at] Court's precedents to the facts in an objectively unreasonable manner.

Brown v. Payton, 544 U.S. 133, 141(2005) (citations omitted).

The Supreme Court has held that a "conflict itself demonstrat[es] a denial of the 'right to have the effective assistance of counsel.'" Cuyler v. Sullivan, 446 U.S. 335, 349 (1980) (quoting Glasser v. United States, 315 U.S. 60, 76 (1942)); see also Wood v. Georgia, 450 U.S. 261, 271 (1987); United State v. Bowie, 892

---

[9](...continued)
federal evidentiary hearing entitle Petitioner to habeas relief or to this court's review of that determination on appeal. See Bryan, 335 F.3d at 1216 n.7 ("[T]he panel erred in applying the deferential review standards set out in 2254(d) and (e) in reviewing [petitioner]'s claims that his trial counsel was ineffective."); Miller, 161 F.3d at 1254 ("[B]ecause the state court did not hold any evidentiary hearing, we are in the same position to evaluate the factual record as it was. Accordingly, to the extent the state court's dismissal of [petitioner]'s petition was based on its own factual findings, we need not afford those findings any deference."); Nguyen v. Reynolds, 131 F.3d 1340, 1359 (10th Cir. 1997) ("[Although] [f]ederal courts entertaining habeas petitions must give a presumption of correctness to state courts' factual findings, . . . [t]his presumption of correctness does not apply . . . if the habeas petitioner did not receive a full, fair, and adequate hearing in the state court proceeding on the matter sought to be raised in the habeas petition.").

F.2d 1494, 1500 (10th Cir. 1990). Furthermore, "[a] defendant who shows that a conflict of interest <u>actually</u> affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." <u>Cuyler</u>, 446 U.S. at 349-50 (emphasis added); <u>see also</u> <u>Bowie</u>, 892 F.2d at 1500. An "actual conflict of interest" cannot be demonstrated merely by "the possibility for conflict," <u>see</u> <u>Cuyler</u>, 446 U.S. at 350; nor may it be demonstrated by "the mere appearance of impropriety," <u>Pool v. Armontrout</u>, 852 F.2d 372, 375 (8th Cir. 1988). Instead, the Supreme Court has held that the claimant must show "that his counsel actively represented conflicting interests." <u>Cuyler</u>, 446 U.S. at 350.

As we have noted, the OCCA ruled that Petitioner failed to proffer sufficient facts or legal argument to support an ineffective assistance of appellate counsel claim. In deferring to that determination, the district court more fully determined that appellate counsel's performance would not entitle Petitioner to habeas relief, even with the presentation of evidence, because there was no actual conflict of interest where 1) Demarcus Hammon never testified for the prosecution and against Petitioner despite his agreeing to do so and 2) the jury never heard Demarcus Hammon's statement, reflected in the factual basis for his plea, inculpating Petitioner. We do not agree that the alleged conflict of interest is based on Demarcus Hammon's value as a state's witness; instead, we interpret the

- 19 -

alleged actual conflict to be based on Demarcus Hammon's value as a potential defense witness.[10]

Based on the trial record and Petitioner's affidavit, which he submitted to the state court, we interpret the alleged conflict as follows: Until Demarcus Hammon's plea agreement, the joint defense strategy upon which trial counsel was hired to represent the Hammon brothers was that the brothers would present a unified front in which Demarcus Hammon would take the full rap for the gun found in the vehicle, both men would disavow knowledge that there were drugs in the car (because it was not their car), and a witness (Damien Smith) would corroborate that Demarcus Hammon legitimately acquired the money found on him during the search. Trial counsel then negotiated a plea bargain with the State for Demarcus Hammon, in which the State agreed to recommend a five-year deferred sentence if, but only if, Demarcus Hammon agreed to inculpate Petitioner. Trial

---

[10] Respondent claims that Petitioner did not raise, in his pro se petition and brief in support, the claim that he now raises on appeal. Respondent claims instead that Petitioner first asserted in his reply brief to this court that trial counsel's dual representation prevented counsel from presenting trial testimony by Demarcus Hammon at Petitioner's trial. We disagree. In his Petition, Petitioner claimed that his trial counsel labored under a conflict of interest because the same attorney worked out a plea agreement for Demarcus Hammon. In that petition, Petitioner also explained that "such actions by counsel eliminated petition [sic] only viable defense." In his brief in support of that petition, Petitioner reasserted that his counsel by operating under a conflict of interest acted against Petitioner's only viable defense. He then argued specifically that "[t]he existing conflict affected the defense. Conflict of interest; deal for co-defendant [Demarcus Hammon], implicating petitioner, deprived co-defendant as future witness in petitioner [sic] behalf."

counsel never informed Petitioner that Demarcus Hammon had pleaded guilty, and, as a result, Petitioner declined a (much less favorable) plea offer of fifteen years in prison and proceeded to trial.[11]  At trial, Petitioner repeatedly asked trial counsel when Demarcus Hammon was going to testify.  According to Petitioner, it was not until his trial was underway that his trial counsel finally informed him, during trial, that Demarcus Hammon had already pleaded guilty and thus would be unable to testify on Petitioner's behalf as planned because part of the plea bargain required Demarcus Hammon to inculpate Petitioner and Demarcus Hammon would receive prison time for lying if he reneged on that inculpation.

If the facts are as Petitioner alleges, then trial counsel's performance was adversely affected by an actual conflict in this case regardless of whether Demarcus Hammon ever actually inculpated Petitioner at trial.  This is so because trial counsel could not simultaneously negotiate the most favorable deal for Demarcus Hammon—a five-year deferred sentence—without both disqualifying Demarcus Hammon from providing exculpatory testimony for Petitioner and, consequently, sabotaging Petitioner's most viable defense strategy and the defense that trial counsel was hired jointly to present for the Hammon brothers.  Thus, once the State offered Demarcus Hammon the conditional plea bargain, Demarcus Hammon's interest in obtaining the most favorable plea bargain conflicted with

---

[11]  We note that trial counsel's conflict may have prevented counsel from pursuing a better plea agreement for Petitioner, or advising Petitioner to accept the State's proffered deal, but Petitioner has not raised these issues on appeal.

Glenn Hammon's interest in presenting his best defense. Yet, trial counsel continued actively to represent both Hammon brothers—negotiating the conditional plea for Demarcus Hammon and leading Petitioner to trial without the best witness (Demarcus Hammon) to create a reasonable doubt in the State's case. See Bowie, 892 F.2d at 1500 ("[D]efense counsel's performance [is] adversely affected by an actual conflict of interest if a specific and seemingly valid or genuine alternative strategy or tactic was available to defense counsel, but it was inherently in conflict with his duties to others or to his own personal interests.").

Where an actual conflict of interest adversely affects counsel's performance, as Petitioner's affidavit suggests here, "[n]o further showing of prejudice is necessary," Bowie, 892 F.2d at 1500; see also Cuyler, 446 U.S. at 349-50; instead, we presume prejudice, see Hernandez v. Mondragon, 824 F.2d 825, 827 (10th Cir. 1987). In fact, here there is more than the general presumption of prejudice; here, there is evidence in the record of actual prejudice—trial counsel's candid statement on the record at trial that he had a conflict of interest based on his duel representation of the Hammon brothers and the associated problems that such representation presented once he negotiated a plea bargain for Demarcus Hammon.

C.    Conclusion

We cannot resolve on the record before us whether Demarcus Hammon's plea bargain contained an agreement that effectively prevented him from providing

- 22 -

statements exculpating Petitioner.[12] Parker, 394 F.3d at 1324 ("No hearing is necessary if we can resolve the petitioner's claims on their merits based solely on the record before us."). If the facts alleged by Petitioner are true, however, then Petitioner has shown that his trial counsel actively represented conflicting interests and thus operated under an actual conflict. Omitting "an issue which was obvious from the trial record, and one which would have resulted in a reversal on appeal," Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (quotations omitted) (emphasis in original), constitutes ineffective assistance of appellate counsel under any reasonable application of Supreme Court precedent to Petitioner's allegations in this case. See Wood, 450 U.S. at 271; Cuyler, 446 U.S. at 348-50; see also Upchurch v. Bruce, 333 F.3d 1158, 1164 n.3 (10th Cir. 2003) ("[W]e reject[] the proposition that omission of a 'dead bang winner' is necessary to prevail on a claim of ineffective assistance of appellate counsel. At the same time, of course, omission of a 'dead bang winner' can be a sufficient basis for such a claim.") (citations omitted). We therefore conclude that the OCCA either reached "a

_____

[12] The State has requested to supplement the record on appeal with the probable cause affidavit to support the arrest of Demarcus Hammon in support of their arguments against habeas relief. Although the affidavit was part of the state trial court record, it was not presented to the federal district court. In our view, the district court should in the first instance have an opportunity to consider this additional evidence in light of the evidence presented at the hearing on remand to decide whether Petitioner is entitled to habeas relief. "Consequently, we conclude the circumstances in the present case do not lead us to believe the interests of justice would best be served by exercising our inherent equitable power to allow [the State] to supplement the record on appeal." United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000).

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

Accordingly, Petitioner is entitled to an evidentiary hearing, and the district court abused its discretion by denying Petitioner habeas relief without conducting one. See Anderson, 425 F.3d at 858.

## CONCLUSION

For the foregoing reasons, we conclude that Petitioner has made sufficient allegations at this stage to merit the opportunity to present evidence in support of his habeas claim concerning his counsels' inadequate representation. We therefore REVERSE the district court's order denying Petitioner habeas relief on his claim of ineffective assistance of trial counsel due to a conflict of interest and ineffective assistance of appellate counsel for failing to raise that claim on direct appeal and REMAND the case to the district court for an evidentiary hearing and further proceedings consistent with this opinion. Petitioner's request to proceed in forma pauperis on appeal is GRANTED.