**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GARY LEE BELDEN,

       Petitioner-Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS; WYOMING
ATTORNEY GENERAL,

       Respondents-Appellees.

No. 07-8000
(D.C. No. 04-CV-203-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Gary Lee Belden, a Wyoming state prisoner, appeals from a district court

order denying habeas relief from his convictions for first-degree sexual assault

and first-degree murder. He argues that the district court erred in resolving his

claims of judicial and prosecutorial misconduct. We affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND[1]

On August 29, 1985, shortly after 8:00 p.m, Terrie Smith left the trailer home that she shared with Nancy Lane to report for work near Diamondville, Wyoming. Smith testified that Lane was asleep in bed at the time and that no one else was in the home. Belden, one of Smith's co-workers, was scheduled to report to work at 9:30 p.m. Instead of punching in, however, Belden abruptly quit his job. Various co-workers described Belden's appearance as suspicious, impatient, and nervous. One co-worker additionally noted that Belden had scratches on his chest, neck, and face. Belden disposed of several personal items before leaving work in a co-worker's truck, which he did not have permission to use. Belden also left various items behind, including a motorcycle and his final paycheck.

Smith returned home after completing her shift early the next morning and found Lane's naked body on the living room floor. Lane had been beaten, sexually assaulted, and strangled to death. Investigators collected scrapings from under Lane's fingernails, semen from her vagina, and a foreign hair that may or may not have come from a blanket Smith had placed over Lane's body. DNA testing later identified the hair as belonging to Smith's then estranged husband.

---

[1] We distill the background facts from the Wyoming Supreme Court's opinion in this case, *Belden v. State*, 73 P.3d 1041, 1047-48 (Wyo. 2003), and note any further facts from the undisputed evidence adduced at trial.

Twenty-eight months later, Belden was located in Utah. He told investigators that he had permission to use the truck that he had taken on the night of August 29, 1985. He also admitted that he knew Lane through Smith, but he denied ever being inside Lane and Smith's home. Belden provided the investigators with blood and hair samples. DNA analysis revealed that Belden was the source of the semen found in Lane's body. DNA analysis of the fingernail scrapings tended to exclude Belden as the source. But Lane's former boyfriend could not be excluded.

For reasons that do not appear in the record, the investigation into Lane's death went dormant for over a decade. In 1998, the investigation resumed and led to charges against Belden for sexual assault and first-degree murder.

A jury trial was held in October 2000. Over Belden's objection, the trial judge allowed into evidence the fact that two women had accused Belden of rape, but that Belden had not been convicted. Belden's defense strategy was that he had consensual sex with Lane on the night of August 29, 1985, and that she was alive when he left her home. Belden suggested that either Lane's ex-boyfriend or Smith's husband might have been involved in her death. The jury returned a guilty verdict on both charges. The Wyoming Supreme Court affirmed in a 3-2 decision, *Belden v. State*, 73 P.3d 1041 (Wyo. 2003).

Belden petitioned the federal district court for habeas relief. Unsuccessful, he now appeals.

## DISCUSSION

## I. Standards of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), when the merits of a claim have been adjudicated in state court, federal habeas relief is available only if the applicant shows that the state court decision was (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). In conducting this deferential inquiry, we presume that the factual findings of the state court are correct, and we place the burden of rebutting this presumption by clear and convincing evidence on the petitioner. *Id.* § 2254(e)(1). Finally, we review the district court's application of the AEDPA framework de novo. *Young v. Sirmons*, 486 F.3d 655, 663 (10th Cir. 2007).

## II. Judicial Misconduct

### A.

Belden first claims that the trial court impermissibly influenced him "to drop a line of questioning intended to show the jury that [Smith's estranged husband] was a viable suspect." Aplt. Opening Br. at 16. Specifically, Belden's attorneys sought to elicit from Smith that (1) her husband wanted to continue a sexual relationship he had had with Smith and Lane; (2) Lane was not interested; and (3) he had a history of sexual assault and violence toward women. The trial

judge asked defense counsel in camera how the jury would view the proposed testimony, given that he viewed it "as being totally nonsense and illogical." ROA, Vol. 7 at 696. He then stated,

> I see this as more damaging to the [d]efense than it is helpful. . . . You know, I want you and your client to insist-particularly your client, to insist that this kind of testimony be received. . . . Now, I don't want to block the [d]efense, but I don't want in my record any allegations of ineffective assistance of [c]ounsel.

*Id.* at 697. Belden expressly indicated that he wanted to proceed as outlined by his attorneys. But after an ensuing off-the-record discussion with his attorneys, Belden changed his mind. His attorneys indicated that, while they would ask Smith about her husband's desire for Lane, Belden did not want them to pursue whether the husband had violent propensities. Belden assured the judge that his decision was not influenced by the judge's comments. The judge commented on Belden's change of mind, stating that it was a wise decision and that he would allow Belden's attorneys to proceed with their limited line of questioning.

The Wyoming Supreme Court concluded that the trial judge's comments were inappropriate and threatened to "involve the judge in the unique attorney-client relationship." *Belden*, 73 P.3d at 1056 (quotation omitted). Nevertheless, it held that Belden was not prejudiced because the trial judge did not comment on the appropriateness of the defense strategy before Belden decided to abandon the strategy. Rather, it believed that the trial judge's comments "up to that point had

been an attempt to determine exactly where the defense was going with its questioning of the witness." *Id*.

Belden contends that the Wyoming Supreme Court's holding is contrary to, or an unreasonable application of, United States Supreme Court decisions stressing the importance of a criminal defendant receiving the "guiding hand of counsel at every step in the proceedings," *Powell v. Alabama*, 287 U.S. 45, 69 (1932); *see also Brooks v. Tennessee*, 406 U.S. 605, 612-13 (1972). We disagree.

A decision is "contrary to" federal law only if the state court (1) reaches a conclusion opposite of that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on materially indistinguishable facts. *Young*, 486 F.3d at 662-63 (quotation omitted). First, the Wyoming Supreme Court did not reach a legal conclusion in opposition to *Powell* and its progeny, as the court clearly recognized the importance of defense counsel's guidance when it discussed whether the trial judge had encroached on the attorney-client relationship. Second, Belden does not claim that the trial judge's comments are controlled by a factually indistinguishable United States Supreme Court case, and we have found none. Consequently, Belden cannot prevail under AEDPA's "contrary to" clause.

As for AEDPA's "unreasonable application" clause, Belden must show that the Wyoming Supreme Court unreasonably applied the governing legal principle to the facts of the case. *See Young*, 486 F.3d at 663. In other words, he must

show that the Wyoming Supreme Court's decision is "at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006) (quotation omitted), *cert. denied*, 127 S. Ct. 1819 (2007). "It is not enough that the decision is clearly wrong or that [we] would have reached a contrary decision." *Id.* We conclude that it was not unreasonable for the Wyoming Supreme Court to decide that Belden was not prejudiced by the trial judge's comments. While we question the court's view that the judge did not comment on the appropriateness of Belden's proposed line of questioning before Belden changed his mind, it is clear that the trial judge's comments did not influence Belden's change of mind, given Belden's express assurance that he was not influenced by the judge. Moreover, the judge allowed Belden's attorneys to pursue Smith's husband as a possible suspect by offering the jury evidence of the husband's sexual desire for Lane. Consequently, it was reasonable for the Wyoming Supreme Court to decide that Belden was not prejudiced by the judge's comments.

## B.

Belden next argues that the trial judge became an adversary by suggesting a "motive to silence" theory under which the two prior rape accusations against Belden were ultimately admitted. When arguing the issue on direct appeal to the Wyoming Supreme Court, Belden contended that the trial judge suggested the

theory during trial on October 11, 2000. But in the habeas proceedings in the federal district court and this court, he contends that the trial judge suggested the theory in an August 29, 2000 letter to the parties' counsel. The federal district court considered Belden's argument only in the context in which it was presented to the state court, apparently finding it unexhausted insofar as it involved the judge's letter. *See Hawkins v. Mullin*, 291 F.3d 658, 670 (10th Cir. 2002) ("While a habeas petitioner might still be able to present to a federal habeas court bits of evidence not previously presented in state court, he cannot first present evidence in a federal habeas proceeding that places the claims in a significantly different legal posture without first presenting that evidence in state court." (quotations omitted)).

Even if we assume that the legal posture of Belden's argument remains the same whether the motive theory was advanced during trial or in the August 29 pre-trial letter, habeas relief is still unavailable. The Wyoming Supreme Court concluded that the prosecution, rather than the trial judge, suggested the theory of admissibility. To support its conclusion, the court cited various portions of the record, including the transcript of an August 28 hearing on the prior rape accusations. After reviewing that transcript, we are convinced that the Wyoming Supreme Court did not unreasonably attribute a "motive to silence" theory to the prosecution. Specifically, we note that at the hearing, the prosecutor theorized that "[m]otive also would go to the murder charge, your Honor, because the

motive in that case would be the sexual assault." ROA, Vol. 2, Doc. 24, App. 6 at 17. In response, the trial judge criticized the theory, questioning how a motive to silence Lane was connected to the purported past rapes. The prosecutor acknowledged the court's criticism and quickly moved on to another area. We conclude that it is sufficiently clear from the record that the "motive to silence" theory originated with the prosecution, before the trial judge's August 29 letter.

C.

Belden challenges the Wyoming Supreme Court's decision that he was not prejudiced when the trial judge scolded both parties' counsel in front of the jury. The incident occurred in the context of the prosecutor's attempts to elicit from a witness the value of Belden's motorcycle, which Belden had abandoned fifteen years earlier. When the prosecutor asked the witness whether he (the witness) would have abandoned such a motorcycle, defense counsel objected and requested a mistrial. After further argument from the prosecutor and voir dire by the defense counsel, the judge ended the matter:

> The Court: Fellows, enough's enough. Enough's enough from both of you. You're treating the Jury and me like we're a bunch of dummies.
> [Defense Counsel]: I'm not trying to, your Honor.
> The Court: Ladies and Gentlemen, you know what this is all about, don't you? Is there anybody confused about what's going on about the motorcycle? If so, raise your hands?
> No hands have been raised. Now, the motion for mistrial is denied. Mr. Anderson [the prosecutor], I won't reprimand you for anything other than wasting our time over this issue of the motorcycle.

Now, Ladies and Gentlemen, it's time for the noon recess and we'll take it now.

ROA, Vol. 6 at 498. Immediately after the recess, the judge instructed the jurors to disregard any impressions they might have developed about his view of the motorcycle evidence. He explained:

I do not want you to think that any of the comments that I made to you at the end of the morning session were a comment on any of the evidence. Anything that I said at the end of the morning recess was not a comment on the evidence. It was a comment on the actions of the attorneys and that's what I intended it to be.

*Id.* at 511-12.

The Wyoming Supreme Court found the judge's remarks "unsettling." *Belden*, 73 P.3d at 1065. But it rejected Belden's claim that he was prejudiced by those remarks, reasoning that (1) the judge focused his ire on the prosecutor, (2) the evidence regarding the "motorcycle was, at most, peripheral to the ultimate question of Belden's guilt," and (3) "any prejudicial effects of the court's comments were mitigated by the timely instruction given to the jury." *Belden*, 73 P.3d at 1065. Belden challenges the state court's decision with minimal analysis and by citing a variety of United States Supreme Court decisions, several of which are of questionable relevance. Roughly on point, however, is *Liteky v. United States*, 510 U.S. 540, 555 (1994) (holding that judicial rulings and remarks during trial that are disapproving or even hostile to counsel, the parties, or their cases do not support a claim of bias or partiality unless they reveal "such a high

-10-

degree of favoritism or antagonism as to make fair judgment impossible"). We conclude that the Wyoming Supreme Court's determination was not contrary to, or an unreasonable application of, *Litekey*. While the trial judge did address his overall comments to both counsel, he limited his reprimand to the prosecutor, seemingly disparaging the motorcycle's evidentiary importance to the state. And none of the comments, while indeed unsettling, were so highly favorable to the prosecution or antagonistic to the defense as to preclude a fair trial, especially considering the trial judge's cautionary instruction. Habeas relief on this matter is not warranted.[2]

### III. Prosecutorial Misconduct

In general, habeas relief is available for prosecutorial misconduct only if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). But if the "challenged statements effectively deprived the defendant of a specific constitutional right," relief is available unless the violation can be

---

[2] We do not address Belden's assertion that "the trial judge made numerous other improper comments denigrating counsel for both parties and reducing the seriousness of the proceedings." Aplt. Opening Br. at 31. None of those purported other comments are detailed or analyzed in the briefs. "It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal." *United States v. Apperson*, 441 F.3d 1162, 1195 (10th Cir. 2006) (quotation omitted), *cert. denied*, 127 S. Ct. 1003 (2007).

"deemed harmless beyond a reasonable doubt." *Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) (quotations omitted).

A.

Belden challenges the Wyoming Supreme Court's determination that he was not materially prejudiced when a government witness commented about his guilt. The comment occurred during an exchange between the prosecutor and a sheriff's investigator:

> [Prosecutor]: And part of what led you to believe that you knew who perpetrated this crime was DNA evidence; is that not correct?
> [Investigator]: Yes.
> [Prosecutor]: Can you relate to the Jury what DNA evidence you had at that time?
> [Investigator]: DNA indicated that Gary Belden *had sexually assaulted her* and had left semen within her body at that time.

ROA, Vol. 7 at 646 (emphasis added). Belden's counsel did not object to the investigator's remark that DNA analysis had somehow shown that Belden's semen was deposited via a sexual assault rather than consensual sex. The Wyoming Supreme Court reviewed the exchange for plain error and concluded that Belden was not materially prejudiced because (1) the remark was not responsive to the prosecutor's question; (2) the investigator was not testifying as an expert on DNA or sexual assaults; (3) Belden was not claiming that it was someone else's semen; and (4) after the remark, the prosecutor moved on with his questioning and the

-12-

remark was not repeated by the investigator or referenced by the prosecutor. *Belden*, 73 P.3d at 1087.

Belden disputes the Wyoming Supreme Court's decision that he was not prejudiced, claiming that this was not the only time the prosecutor elicited testimony on his guilt. But he mentioned only the above testimony in his brief to that court. The federal district court found Belden's claim procedurally barred. We agree. As we have already noted, "[w]hile a habeas petitioner might still be able to present to a federal habeas court bits of evidence not previously presented in state court, he cannot first present evidence in a federal habeas proceeding that places the claims in a significantly different legal posture without first presenting that evidence in state court." *Hawkins*, 291 F.3d at 670 (quotations omitted)). The legal posture of Belden's claim to the Wyoming Supreme Court involved only the effect of the quoted testimony, but he now attempts to argue the propriety of other testimony. Indeed, he does not take issue with any part of the Wyoming Supreme Court's decision regarding the quoted testimony. Because Belden's habeas claim in this posture was not presented to the Wyoming Supreme Court, it is unexhausted. And because Wyoming applies a procedural bar to claims that could have been raised on direct appeal but were not, *see* Wyo. Stat. Ann. § 7-14-103(a),[3] we can reach the claim's merits only if Belden

---

[3]      Belden does not argue that Wyoming's procedural bar would not be an adequate and independent ground sufficient to block his claim if he were to return

(continued...)

"demonstrate[s] cause and prejudice or a fundamental miscarriage of justice,"

*Hammon v. Ward*, 466 F.3d 919, 925 (10th Cir. 2006); *see also Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002). Belden does not attempt to do so. Accordingly, we do not reach the merits of his claim. *See Hawkins*, 291 F.3d at 670.

B.

On appeal to the Wyoming Supreme Court, Belden argued that the prosecutor committed misconduct during closing argument by stating that the two prior rape accusations showed Belden's propensity to sexually assault women. Belden relied on the following portion of the prosecutor's argument:

> [F]inally, the evidence shows that in the past, the Defendant had had sexual intercourse with women and been accused of rape. It is our contention, Ladies and Gentlemen, that these facts point out one inescapable conclusion, that the Defendant *sexually assaulted* and murdered Nancy Lane.

ROA, Vol. 1, Doc. 8, Attachment A at 32 (emphasis from Belden's state-court brief); *see also id.* at 36-37. The Wyoming Supreme Court concluded that Belden had taken the quoted language out of context and that, when properly viewed, the prosecutor was not making a propensity argument. *Belden*, 73 P.3d at 1085-86.

---

[3](...continued)
to state court. *See* Wyo. Stat. Ann. § 7-14-103(b) (lifting the bar for (i) "evidence which was not known or reasonably available to [the petitioner] at the time of a direct appeal" or (ii) upon a state-court "finding that the petitioner was denied constitutionally effective assistance of counsel on his direct appeal").

Belden now claims that the Wyoming Supreme Court unreasonably determined the facts in light of the record. We disagree. As noted by the court, the challenged statements were made at the end of a summary of all the evidence presented at trial and "referr[ed] not to the prior sexual assault accusations but to all of the other facts [the prosecutor] had listed." *Id.* at 1086. Belden has not clearly and convincingly refuted the Wyoming Supreme Court's view of the record.

C.

Belden also argued on appeal to the Wyoming Supreme Court that the prosecutor violated a stipulation with defense counsel. The stipulation provided that "[c]ertain events occurred in the life of Nancy Lane which she did not write about in her diary." ROA, Vol. 10 at 1273. The defense agreed to the stipulation to avoid the implication that Belden must have sexually assaulted Lane because she did not write in her diary about any sort of intimate relationship with him. *Id.*, Vol. 7 at 627-28. The prosecution wanted the stipulation in order "to keep out of evidence Lane's history of multiple sex partners," which the diary does not relate. Aplt. Br. at 47 (quotation omitted); *see also* ROA, Vol. 7 at 625. The court clerk read the stipulation to the jury at the close of evidence.

According to Belden, the prosecutor violated the stipulation in his closing argument when he said:

Please, Ladies and Gentlemen, take the time during your deliberations to examine [Lane's diary] closely. . . . You will know that Nancy Lane was -- at the time of her death, she was involved with one fellow. She'd had a sexual interlude with that fellow earlier in the week of her death. That she was kind of flirting with another fellow . . . . You'll find that she no more had a relationship with [Belden] than she had a relationship with the man in the moon *because she was the type of person to put those things down*.

*Id.*, Vol. 10 at 1310 (emphasis added). The Wyoming Supreme Court concluded that the prosecutor did not violate the stipulation because "[t]here is nothing in the stipulation that would prevent the prosecutor from arguing that if the victim had an intimate relationship with Belden, that it would have been mentioned in the diary." *Belden*, 73 P.3d at 1089. Moreover, the court stated, "We do not think it is inconsistent for the prosecutor to agree that the victim did not write everything in her diary while contending [that] an intimate relationship would be one of the things that she would write about in her diary." *Id.*

We do not entirely follow the Wyoming Supreme Court's reasoning. But even if we were to conclude that the court unreasonably characterized the prosecutor's remark as not violating the stipulation, we cannot discern any effect whatsoever on the trial. Specifically, defense counsel responded in closing argument to the remark, focusing the jury on the stipulation and how it went against the government's case. Further, he invited the jury to "look at [the diary] . . . with the idea that there are things that happened that aren't in there," ROA, Vol. 10 at 1344, and soon proceeded to recount the names of men who had "slept

-16-

with [Lane]," *id.* at 1346. Given that defense counsel not only used the stipulation against the prosecution, but also skirted the stipulation's purpose of avoiding Lane's sexual history, we discern neither fundamental unfairness nor the deprivation of any specific constitutional right from the prosecutor's closing-argument remark.

D.

Belden further argued to the Wyoming Supreme Court that the prosecutor implied during closing argument that Belden had the burden of proving that the sex with Lane was consensual in order to be found not guilty. The challenged statement appears in italics at the end of the following quote:

> The evidence, I submit to you on behalf of the State of Wyoming, is overwhelming. The Defendant quits his job. He steals a truck, a truck similar to the one that's seen in the vicinity of Nancy Lane's house. Nancy Lane's brutally murdered. She's brutally raped. *The Defendant's semen is found in and around [Lane] and there is no evidence to suggest that she ever, ever, ever, ever consented to have sex with the Defendant.*

ROA, Vol. 10 at 1312 (emphasis added). The Wyoming Supreme Court rejected Belden's argument that the prosecutor was attempting to shift the burden of proof, and determined instead that the prosecutor "was making an argument based upon the trial evidence." *Belden*, 73 P.3d at 1089. We agree and see nothing unreasonable in that determination. *Cf. Beachum v. Tansy*, 903 F.2d 1321, 1328 (10th Cir. 1990) (rejecting the petitioner's burden-shifting argument on the basis that the prosecutor was merely reciting the physical evidence that supported the

victim's testimony).

## CONCLUSION

The judgment of the district court is AFFIRMED.

                Entered for the Court


                Stephen H. Anderson
                Circuit Judge